RICUMSTRICT v. GRIFFIN.

5-1686                                    317 S. W. 2d 819

Opinion delivered November 24, 1958

*George E. Pike,* for appellant.

*Coleman, Gantt & Ramsay & E. Harley Cox, Jr.,* for appellee.

GEORGE ROSE SMITH, J. This is a suit by the appellee to obtain cancellation of a deed by which he conveyed four town lots in DeWitt to his stepdaughter, the appellant. The complaint alleged that the defendant had induced the plaintiff to sign the deed by fraudulently representing it to be a mortgage. The chancellor rejected the charge of fraud but found that one of the lots, Lot 7, had been included in the conveyance by mutual mistake. The decree reformed the deed by deleting Lot 7 and also impressed a lien on that lot for a debt of $149.95 that the appellee owes the appellant. Both parties have appealed.

The four lots were originally purchased in 1947 and 1948 by Griffin and his wife, who had the deeds made to themselves and to the appellant. The Griffins had built a small house on Lot 7 and had just begun the construction of a house on the other lots when Griffin's wife died in about 1950. The appellant wanted to complete the second dwelling as a home for herself, but she was told by an attorney that she would have to have a deed to the lots to be entitled to finish the house.

The parties, who are still on friendly terms, are pretty well in agreement about the way in which the deed now in dispute came to be executed. Griffin was an illiterate laborer, somewhat addicted to drink, and after his wife's death both he and his stepdaughter feared that he might lose his home on Lot 7 through improvidence or might someday remarry and lose it to his second wife.

The appellant consulted an attorney, who prepared the deed with a view to carrying out the parties' wishes.

By the instrument Griffin conveyed the four lots to his stepdaughter; but he reserved a homestead right in Lot 7, with a proviso that this right would cease if he should abandon his residence on the lot for a year or if he should remarry and be divorced. The deed was signed and acknowledged by Griffin, who has abandoned his original assertion that he thought he was signing a mortgage. After the deed was executed, in 1951, the appellant finished the house on the other lot and was living there when the case was tried. There seems to be no real dissension between Griffin and his stepdaughter; we infer from the record that Griffin's second wife may have persuaded him to bring this suit.

We think the weight of the evidence to be against the chancellor's finding that Lot 7 was included in the conveyance by mutual mistake. At the trial both parties were easily led by questions on direct and cross examination and contradicted themselves from time to time. For example, Griffin, in response to a leading question, said that he had not intended to convey the property; but when he was asked later on if he knew that he was signing a deed to the property he answered: "Well, to be honest, I sure did know it." The appellant testified that her attorney fully explained the effect of the deed before Griffin signed it, and Griffin refused to deny that such an explanation was made. The deed was in fact aptly worded to give effect to the admitted intentions of both the grantor and the grantee. We are convinced that it was a valid conveyance, voluntarily executed by the appellee without fraud or mistake on the part of anyone concerned.

Counsel for the appellee, citing such authorities as the Restatement of Trusts, § 44, and *Walker* v. *Biddle*, 225 Ark. 654, 284 S. W. 2d 840, insist that a constructive trust should be declared in Griffin's favor, because the parties were in a confidential relation. This, however, is not a case in which an absolute deed was made in reliance upon the grantee's oral promise to hold the land for the grantor. Here the agreement of the parties was written into the deed itself, and it has not been

shown by clear and convincing evidence that the appellant orally assured her stepfather of any interest in the land other than the homestead right that was actually reserved.

By cross appeal the appellee contends that the court erred in fixing a lien upon Lot 7 to secure the appellant's judgment for $149.95. This sum is the unpaid balance of an unsecured loan that the appellant made to the appellee, to enable him to pay delinquent federal income taxes. It does not clearly appear that the Government had a lien to which the appellant might be subrogated, and there is no other basis for impressing a specific lien on Lot 7. The appellant's proof entitles her to a money judgment only.

Reversed and remanded for the entry of a decree consistent with this opinion.

WILLIAM J. SMITH, J., not participating.